## COMMONWEALTH v. STEEL.

The act of the 24th of March, 1818, being a supplement to the act of the 10th of March, 1810, taxing certain offices, extends only to officers who have resigned office, or been removed therefrom, before the expiration of their term of office, and was not intended to apply to officers in the continuous discharge of the duties of their offices.

Where one was elected to the offices of Prothonotary of the Court of Common Pleas, and clerk of the Courts of Oyer and Terminer, &c., and Quarter Sessions of the peace, for two consecutive terms of three years each; and the fees received in each of the three years of his first term, and in the first year of his second term, did not reach the sum of $1500, and those received in the second and third years of his second term exceeded that sum; he cannot, under the

act of the 24th of March, 1818, appropriate the excess over $1500, of fees received in the last two years of his second term, to supply the deficiencies in that sum, which occurred in the four preceding years.

IN error from the Common Pleas of Huntingdon county.

*May* 19. This case came into the court below, by appeal, at the instance of the Commonwealth of Pennsylvania, from the report of the auditors of Huntingdon county, in and by which, under the act of 16th of April, 1845, the accounts of James Steel, as Prothonotary of the Court of Common Pleas, and Clerk of the Courts of Oyer and Terminer, &c., and Quarter Sessions of the Peace of Huntingdon county, with the Commonwealth of Pennsylvania, were audited, examined, and settled. The court thereupon directed *an issue*, to try whether James Steel, prothonotary, &c., as aforesaid, had paid over all the moneys due by him to the commonwealth, on fees received by him during his tenure of, and continuance in the offices aforesaid; and if not, to ascertain and find what sum or sums of money, out of the fees received by him as aforesaid, up to the time his said accounts were audited and settled, were due and owing by him to the commonwealth. The facts of the case, and the questions raised at the trial of the issue in the court below, are clearly stated in the charge of his honour Judge WILSON to the jury, the material parts of which are the following :—

"The defendant was elected to the offices of prothonotary of the Court of Common Pleas, clerk of the Courts of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace, in the fall of 1839, for the term of three years, and took upon himself the duties of these offices on the 1st of December, 1839.

"He was re-elected to the same offices in the fall of 1842, and for his second term of three years, entered upon the duties of his offices on the 1st of December, 1842.

"He was again re-elected in the fall of 1845, and commenced his third term 1st of December, 1845.

"The amount of fees actually received by the defendant in the three offices held by him, are agreed upon by the parties; and show that, to the dates at which his accounts were to be annually settled, he received the following sums, to wit:—

| | | | | | | |
|---|---|---|---|---|---|---|
| To the 1st of October, | 1840, | . | . | . | $486.05¾ |
| " | " | " | 1841, | . | . | 1,057.67 |
| " | " | " | 1842, | . | . | . | 1,084.16 |
| " | " | " | 1843, | . | . | 1,480.51¾ |
| " | " | " | 1844, | . | . | . | 2,561.33 |
| " | " | " | 1845, | . | . | 2,747.48 |

"The 1st of October, 1846, when the next annual settlement would have taken place, had not arrived when this proceeding was commenced, but is embraced in the case in hand.

"It will be observed that the four first years Mr. Steel held these offices, the fees actually received by him did not produce the excess upon which 50 per cent. was payable to the commonwealth.

"The commonwealth contends that the first four years (as the actual receipt of fees in the offices held by Mr. Steel did not reach the sum of $1,500) are not to be taken into the account to show his liability to the plaintiff; that the settlement must be based on the amounts actually received each year; and that where there is an excess received in any one year over $1,500, that such excess cannot be applied to make up a deficiency of the preceding years. Secondly, that if such excess can be applied to a preceding year in which there is a deficiency, it cannot be carried back to supply a deficiency of a year in any preceding term of the three years for which the officer is elected and commissioned, but that the receipts of each term of his offices must be settled and accounted for irrespective of a preceding or subsequent term.

"On the first of these positions, the auditor-general and state treasurer settled the account of the defendant, from the returns made by him to the auditor-general's office, by throwing out of view the first four years, when the fees received by the defendant did not reach, in any one of said years, $1,500, and taking the years 1844 and 1845, in each of which he received more than $1,500, and charge him with 50 per cent. of the excess of these two years. On this basis the balance was struck and entered by the auditor-general, on the 22d February, 1846.

"Under the act of 16th April, 1845, Pamph. Laws, 534, the mode of adjusting the accounts of the prothonotaries is changed: and it is made the duty of the county auditors to audit and settle the accounts of the prothonotaries for all taxes and other dues to the commonwealth received by them, &c.; and makes it the duty of the auditors of the several counties, at their next annual meeting (after the passage of this act) to audit the accounts of the several county treasurers, to audit, examine, and settle the accounts of the several prothonotaries, registers, and recorders of the respective counties for the years 1841, 1842, 1843, and 1844, and certify to the auditor-general, any and all balances they shall find to be due to the commonwealth from the said officers, for the said years; and

the auditor-general is required to give information thereof to the state treasurer, who is to proceed to collect such balances, &c.

"Under the provisions of this law, the auditors of the county, at their first meeting after its passage, when they met to audit the accounts of the treasurer of the county, to wit: on the 27th of January, 1846 (which was before the action of the auditor-general, striking and entering the balance in his department), audited and settled the accounts of the defendant, including the whole time of his holding the offices up to the 1st October, 1845. The auditors of the county proceeded on the principle of allowing the defendant the deficiency necessary to make up the sum of $1,500, for the years ending 30th September, 1840, 1841, 1842, and 1843, out of the excess of the years ending 30th September, 1844 and 1845, and ascertained the whole excess of the fees received by the defendant, after allowing him $1,500 a year for six years, to be $407.22 ; 50 per cent. of which, payable to the commonwealth, was $208.61: to meet which sum the defendant produced the receipt of the state treasurer, dated January 13, 1846, for $221.00, by which the commonwealth was overpaid $12.39.

"The principle adopted by the auditor-general and state treasurer, by adding the fees received from 1st Oct., 1843, to 1st Oct., 1844, - - - - - - - - - $2561.33
to the fees of the succeeding year, ending 30th Sept., 1845, - - - - - - - - - 2747.48

Makes the aggregate of - - - - - - $5308.81
And deducting, for each of said years, $1500, - - 3000.00

Left this balance, - - - - - - - $2308.81

On which to charge the defendant with 50 per cent., which would show in the receipt of moneys due commonwealth, - - - - - - - - $1154.40½
From which deduct the payment by defendant, 221.00

                                                          $933.40½

The principle adopted by the auditors of the county, which is the correct one, is founded on the act of the 24th March, 1818.

"The defendant has continued without intermission in the three offices, from the 1st December, 1839: he having been twice re-elected and recommissioned.

"The counsel for the commonwealth contend that the allowance for a deficiency of any year, while the officer holds the office, is only to be made up to him out of the fees received after he is out

of office, when his official duties have ceased by resignation or removal.

" The law, as I view it, clearly intended to make the compensation of the officer for his services, $1,500 for each consecutive year he is in office, if the office or offices he holds will yield that sum ; and any excess of fees made by him while in office, after he has received $1,500 for each year he holds the office, he shall be taxed at the rate of 50 per cent., to be paid to the commonwealth, when received by the officer—but that he is not obliged to pay any of the 50 per cent. to the commonwealth, until each year he has been in office has produced him $1,500. And the payment by the defendant, exceeding 50 per cent. on the surplus, received by him, after his allowance of $1,500 per year, for the time he held the offices, up to the time the accounts were audited by the county auditors, he will be entitled to your verdict."

The plaintiff requested the court to instruct the jury :—

That if the fees received by James Steel, prothonotary, &c., in any one year during his continuance in office, amounted to more than $1,500, he is bound to pay the commonwealth one-half of the excess.

That James Steel having been elected to the offices of prothonotary, &c., in October, 1839, and entered upon the duties of said offices 1st December, 1839, for the term of three years, and having been re-elected and commissioned for the term of three years from 1st December, 1842, he is not entitled to appropriate any part of the surplus proceeds of his second term to supply deficiencies under $1,500 in any year in his first term.

That having continued in office, as aforesaid, from 1st December, 1839, till 1st December, 1845, and being still in office, he is not entitled to the benefit of the act of 24th March, 1818, until he shall have gone out of office.

To this request, the court answered as follows :—

" We refuse to answer as above requested, and for explanation of our views on each, refer to our general charge."

The jury found for defendant ; whereupon the plaintiff sued out this writ of error.

Errors : The court erred in refusing to instruct the jury as requested by the plaintiff ; and in the instructions to the jury in their general charge.

*Fisher*, for plaintiff in error.

*Miles*, contrà.

*May* 22.   COULTER, J.—The act of the 24th March, 1818, being a supplement to the act of 10th March, 1810, taxing certain offices, by its very terms extends only to officers who have resigned or have been removed from office, and was clearly not contemplated to apply to any officer while in the discharge of the duty of his office.

There exists no good, or even colourable reason why the courts should strain the act to embrace the case of officers who continue in office. ·Whenever the defendant resigns or is removed from his office, he will be entitled to the benefit of the act of 1818, and belong to the class of persons for whose benefit it was enacted. It must have been within the knowledge of the legislature that prothonotaries, in the first years of their holding office, would probably not receive to the amount of $1,500, for the act of 1818 is predicated on that basis; and that in subsequent years, especially if they were reappointed, they could receive more, yet they are totally silent as to making up the deficiencies of the first years, by the excess of what was received in subsequent years. The act of 1818 was itself hardly excusable as a measure of justice to the commonwealth, but if it was to be extended as interpreted by the court below, it would leave the commonwealth to receive the tax out of the dribs and pickings of fees that the officer chose to let remain until he was out of office. The intent of the act of 1810 was, that for all the fees which the officer received in any one year above the $1,500, he should account to the commonwealth for one-half or 50 per cent. The act of 1818 provided that when any officer resigned, or was removed from office, he should be allowed to receive from his successor in office so much of the fees remaining due to him as would make up the amount of any one year, or of every year while he was in office $1,500, and that for the sums beyond that received from his successor he should account on oath, upon the terms prescribed in the act of 1810. It will thus be observed that the whole structure of the act of 1818 is made applicable to a prothonotary who is out of office, and that it is impossible, without doing violence to its spirit, phraseology, and purpose, to make its provisions applicable to the case of the defendant.

We are of opinion that the three points submitted by the counsel of the commonwealth ought to have been answered in the affirmative.

Judgment reversed, and a *venire de novo* awarded.